Ricardo **BERNALES**, Plaintiff–Appellant,

v.

**COUNTY OF COOK**, Defendant–Appellee.

No. 01–2198.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 29, 2002.

Decided May 16, 2002.

Before COFFEY, KANNE, and
WILLIAMS, Circuit Judges.

## ORDER

Ricardo Bernales, a native of Peru, was a physician at Cook County Hospital from 1978 until 1995, when he lost his job as part of an overall reduction in force. He sued Cook County under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging that the hospital failed to promote him and eventually terminated him based on his national origin. He also alleged that the hospital terminated him in retaliation for filing a discrimination complaint. The district court granted summary judgment for Cook County. See 139 F.Supp.2d 927 (N.D.Ill.2001). We affirm.

## I.

Bernales was employed by Cook County Hospital in the Allergy/Immunology Division of the Department of Pediatrics. In 1993 he applied for the division chair position that would soon become vacant, but he was unsuccessful. The position was offered to the only other applicant, Dr. James Moy (from Hong Kong), who had worked the previous six years in the Department of Allergy/Immunology/Microbiology at Rush–Presbyterian–St. Luke's Medical Center. Moy's appointment had been recommended by Dr. Philip Ziring, the Chairman of Cook County Hospital's Department of Pediatrics, who believed that Moy possessed the stronger research and clinical qualifications. Although Ziring did not back Bernales for the division chair, he did recommend at the time that Bernales be promoted to senior physician.

In 1994 Bernales filed a charge of discrimination with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission, alleging that he was passed over for the division chair because of discrimination based on his national origin. He amended his charge a year-and-a-half later to allege that, since the initial filing, Moy and Ziring had criticized him in job performance reviews and overburdened him with inpatient-service rotations and consultation coverage.

In 1995 Cook County Hospital learned that budgetary cuts in the coming year would require department heads such as Ziring to reduce their operating budgets by eight percent. Ziring decided to eliminate five positions, three of which were full-time physicians, including Bernales. According to Ziring, the budget cuts forced him to choose between eliminating the three physician positions and halting programs to treat indigent children, and he determined that the physicians' functions could be absorbed elsewhere. On December 8, 1995, Bernales received a letter from Barbara Penn, Cook County Hospital's Director of Human Resources, informing him that his position had been eliminated "pursuant to the 1996 annual appropriations adopted by the Cook County Board of Commissioners." Bernales subsequently filed a second charge of discrimination with the Illinois Department of Human Rights and the EEOC, alleging that he was terminated in retaliation for filing the discrimination charge in 1994. This lawsuit followed.

## II.

We review the grant of a summary judgment de novo, taking the facts and reasonable inferences in the light most favorable to the non-moving party. Lalvani v. Cook County, Illinois, 269 F.3d 785, 789 (7th Cir.2001). Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### A. Failure to Promote

On appeal Bernales renews his contention that Cook County held his national

origin against him when deciding not to promote him to the division chair. He sharpened that contention at oral argument when his counsel asserted that Ziring's stated reasons for selecting Moy were dubious, *post hoc* rationalizations. Bernales' counsel argued that the posted job notices did not identify the qualifications for the position, and that Ziring devised more specific criteria only later in order to justify Moy's selection.

The job notice that appeared in pediatric journals indeed reveals little information about the minimum qualifications for the division chair. Two such postings, for instance, noted only that the Pediatrics Department sought "an academic [Board Certified] Chairman, Allergy/Immunology," and that a "[l]arge patient base provides ample opportunity for teaching and clinical research." Ziring asserted later that other considerations influenced his decision. For instance, he testified at his deposition that doctors at the hospital had four principal missions: (1) delivering patient care on both an inpatient and outpatient basis; (2) overseeing educational programs to train residents, fellows, and medical students; (3) conducting research and attracting research grants, particularly in areas of interest to under-served children, such as sickle cell disease; and (4) developing initiatives for new programs and services through outreach activities, such as opening and staffing subspecialty clinics around the county. In all of these areas, Ziring concluded, Moy "far exceeded" Bernales.

We view these *post hoc* criteria with greater scrutiny than we would if Ziring had followed posted qualifications. *See Mozee v. Amer. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1045 (7th Cir.1991) (for selection process in which the employer concedes there were no posted qualifications, "the use of hindsight to construct 'qualifications' for a position must be

viewed with some suspicion"). But so long as the employer does not base its decision on criteria that are unlawful, we "must respect the employer's unfettered discretion to choose among qualified candidates." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir.2002) (internal citation and quotation omitted). A court's role is to prevent unlawful hiring practices, not to second-guess employers' business decisions. *Id.* In cases like this where an employer must evaluate paper credentials, a court should not substitute its judgment for the employer "unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face." *Deines v. Texas Dep't of Protective & Reg. Servs.*, 164 F.3d 277, 280 (5th Cir.1999) (internal citation and quotation omitted). A plaintiff seeking to prevent summary judgment on the strength of relative qualifications must have credentials so superior to those of the person selected such that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Millbrook*, 280 F.3d at 1180–81 (internal citation and quotation omitted); *see also EEOC. v. La. Office of Community Servs.*, 47 F.3d 1438, 1443–44 (5th Cir. 1995) (refusing to second-guess promotion decision without proof that *post hoc* promotion criteria "were so irrational or idiosyncratic as to suggest a cover-up").

■ Whether or not it was unwise to bypass Bernales in favor of Moy, Ziring's decision cannot be considered so absurd as to defy reason. Ziring had copies of both doctors' CVs, from which he could reasonably conclude that Moy possessed superior credentials. A review of Bernales' CV shows that in fifteen years at Cook County he had not undertaken any research projects and had received no research funding. By contrast, Moy, who was highly regarded as a clinician and teacher, had

received numerous research grants, maintained a faculty appointment and research laboratory privileges at Rush, and was committed to extending allergy services to other departments within the hospital as well as establishing new asthma prevention and treatment services in the community. Given the nature of the division chair position, it seems reasonable that the hospital would search for a candidate to spearhead new research, generate research grants, and develop programs within and outside the hospital. While Bernales may have been qualified for the division chair, we cannot say that Moy was unqualified or that Ziring was unreasonable in concluding that Moy was the better person for the job. The grant of summary judgment to Cook County on this claim was proper.

## B. Discharge Based on National Origin

Bernales next argues that Cook County Hospital fired him because of his national origin. He can prove national origin discrimination with either direct or circumstantial evidence of discriminatory intent. *See Pafford v. Herman,* 148 F.3d 658, 665 (7th Cir.1998). Bernales argues that the district court ignored two instances of direct evidence that he believes demonstrates Ziring's discriminatory intent. In one conversation Ziring allegedly told Bernales, "We have a good candidate for the position and he was very excited and he is American." In another conversation, Ziring allegedly asked Bernales, "Did you eat your tacos today?" Bernales contends that these remarks from the "decisionmaker's mouth" are direct evidence of discrimination that should have reached a jury.

For statements to qualify as direct evidence, they must relate to and be made contemporaneously with the adverse employment action. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Markel v. Bd. of*

*Regents of Univ. of Wis. Sys.,* 276 F.3d 906, 910 (7th Cir.2002); *Fyfe v. City of Fort Wayne,* 241 F.3d 597, 602 (7th Cir. 2001). Here, the first of Ziring's statements—"We have a good candidate for the position ... and he is American"—did not relate to the decision to terminate Bernales. Ziring allegedly made the remark at least one year before Bernales' discharge, when a candidate named Dr. Byung–Ho Yu was being considered for the senior physician post.

As for the second remark that Bernales attributes to Ziring—"did you eat your tacos today?"—that comment, too, was made well in advance of any decision to terminate, on only one occasion, and at a time when both men were on friendly terms. While the alleged comment is offensive, it alone does not directly prove discriminatory intent. Direct evidence of discrimination, if believed, must prove the particular fact in question without reliance upon inference or presumption, and that is not the case here. *See Markel,* 276 F.3d at 910; *see also Gorence v. Eagle Food Ctrs., Inc.,* 242 F.3d 759, 762 (7th Cir.2001) (illustrating direct evidence with the example "I fired Judy because she was an old woman").

Lacking any direct evidence of discriminatory intent, Bernales must therefore proceed using the *familiar McDonnell Douglas* indirect method of proof. To establish a prima facie case of national origin discrimination under Title VII, he must show that (1) he belonged to a protected class; (2) he was qualified for the job in question or was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated persons of a different national origin. *Lalvani,* 269 F.3d at 789; *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1398 (7th Cir.1997). The district court found that Bernales satisfied the first

three prongs of the prima facie case but had failed to meet the fourth. In evaluating the fourth prong, however, the district court never addressed Bernales' specific argument that two physicians—Yu and Moy—were similarly situated to him yet "were not eliminated despite the fact that neither had the experience of Plaintiff."

■ Bernales reiterates that he satisfied the fourth prong by identifying Moy and Yu as similarly-situated physicians who were treated more favorably than he was. For starters, however, Bernales cannot show that his position was similarly situated to Moy's. *See Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693 (7th Cir.2000) (plaintiff must show that his job was "fungible" with that of similarly situated individual). Although Moy, like Bernales, was a specialist in pediatric allergy and immunology, Moy had recently been promoted over Bernales as chair of the Allergy/Immunology Division. Moreover, Bernales has not shown that he can match Moy's superior qualifications. *See Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 618 (7th Cir.2000) (among factors that court considers in similarly situated analysis are "experience, education, and qualifications relevant to the positions sought"); *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141 (7th Cir.1998) (noting that plaintiff was not similarly situated to other employee because plaintiff lacked qualifications that the other employee possessed). Furthermore, Bernales does not specify that Moy as division chair was even subject to the RIF, which means that the two men were "not in materially parallel positions." *Radue*, 219 F.3d at 618.

■ Whether Yu is similarly situated might have presented a closer question, but Bernales fails to develop the argument. Bernales notes that Yu "held the exact same position"—senior physician in the same department—but offers no specific evidence to suggest similarity with

respect to experience, education, or qualifications. Conclusory assertions and uncorroborated generalities are insufficient to support a Title VII claim. *See Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 615 (7th Cir. 2001). Because Bernales did not establish his prima facie case, we need not proceed to the pretext stage. *See Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir.1997).

## C. Retaliation

Finally, Bernales argues that the hospital discharged him in retaliation for his filing of an earlier charge (challenging the decision not to promote him to division chair) with the Illinois Department of Human Rights and the EEOC. To establish a prima facie case of retaliation, however, Bernales must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Lalvani*, 269 F.3d at 790.

■ The district court properly concluded that Bernales' retaliation claim foundered on the element of causation. Twenty-two months elapsed between Bernales' filing of state discrimination charge (February 1994) and his termination (December 1995), and that interval is too long to suggest causality. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (concluding that twenty months was too long and citing cases holding that three or four months was too long); *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 952–53 (7th Cir. 2001) (en banc) (noting that six weeks was too long).

Bernales relies on the Fifth Circuit's decision in *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir.1992), upholding a trial judge's finding of retaliation even though the employee was not discharged until fourteen months after she filed a

discrimination charge. But that case presented a different procedural posture: unlike the summary judgment in the present case that is reviewed de novo, the suit in *Shirley* had proceeded to a bench trial resulting in a verdict of retaliation that was reviewed more deferentially for clear error. Moreover, the real reason motivating the discharge in *Shirley* was shrouded by other circumstances: the employee had been terminated only two months after the EEOC dismissed her discrimination complaint, which her boss had repeatedly disparaged. Indeed, this court in *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 485 (7th Cir.1996), explicitly distinguished *Shirley* and similar cases by noting that retaliation charges may be allowed to proceed after long periods of time if "additional circumstances ... raised suspicion about the legitimacy of the employer's acts." Bernales does not identify any such circumstances here.

The district court's judgment is

**AFFIRMED.**