# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-1922

PREM LALVANI,

*Plaintiff-Appellant,*

*v.*

COOK COUNTY and ROBERT COLEMAN,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 2847—**Ronald A. Guzmán**, *Judge.*

ARGUED APRIL 7, 2004—DECIDED FEBRUARY 3, 2005

Before FLAUM, *Chief Judge,* and WOOD and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* Prem Lalvani, a 30-year veteran of the Cook County Hospital (CCH) Social Work Department, was terminated in 1996 when Cook County implemented a county-wide reduction in force (RIF). After several unsuccessful attempts to clarify his rights with respect to the layoff, Lalvani filed suit, alleging among other things a violation of his due process rights. The district court dismissed all of Lalvani's claims on summary judgment. We reversed with respect to the due process claim. See *Lalvani v. Cook County*, 269 F.3d 785 (7th Cir. 2001) *(Lalvani I)*. On remand, a jury found that Lalvani had merit employee

status, such that he had a property interest in his job, but it also found, in response to a question posed to it, that he had not been terminated "for cause." Based on these findings, the district court concluded that Lalvani had received all the process that he was due. The case is again before us, as Lalvani contends that the jury received erroneous instructions and that the district court erred in holding that he suffered no due process violation. We conclude that the instructions misstated the law, insofar as they directed the jury to answer the question whether Lalvani was terminated "for cause." Based on the verdict we have, we conclude that Lalvani's due process rights were violated. We therefore remand for a trial limited to the question of damages.

# I

We will assume familiarity with our earlier opinion and will repeat only those facts necessary to the disposition of this successive appeal. Lalvani began working as a social worker at CCH in 1966, when the hospital was under the authority of Cook County. In 1969, control of the hospital was transferred to the Health and Hospitals Governing Commission (the Governing Commission). Four years later, CCH promoted Lalvani to the position of Medical Social Worker IV. Effective November 30, 1979, the Governing Commission was abolished, at which time control over CCH was returned to Cook County, where it has remained since then. Under 55 ILCS 5/5-37003, the Cook County Board of Commissioners was to "have and exercise all rights, powers and duties heretofore exercised by [the Governing Commission]. . . . All rights, duties and obligations of the Commission shall become the rights, duties and obligations of the Board of Commissioners."

In 1989, Lalvani, who is of Asian-Indian descent, unsuccessfully sought a promotion to a vacant Medical Social

Worker V position. When CCH did not award him the job, he filed a grievance with CCH and the Illinois Human Rights Commission alleging that the selection committee had decided in advance to hire an African-American and thereby had engaged in race discrimination. "According to Lalvani's evidence, his relationship with management in the Social Work Department deteriorated markedly after he filed his complaint with the Commission." *Lalvani I*, 269 F.3d at 787. Whereas previously he had received only praise, from 1989 to 1993, "he endured a long string of setbacks, including increased work assignments and disparate treatment with respect to matters such as discipline, time off, access to resources, and promotions." *Id.* at 787-88. This prompted Lalvani to file several successful grievances against his supervisors. Then, in July 1995, Robert Coleman, Director of the CCH Social Work Department, lodged several written complaints against Lalvani suggesting that he was not satisfactorily performing his duties. Coleman ultimately dropped these charges when Lalvani challenged them.

A year later, Cook County engaged in a substantial RIF under which it laid off 500 employees county-wide. CCH department heads were instructed to observe strict limits on payroll budgets and to reorganize staffing as necessary to meet their departmental service requirements. Within his department, Coleman eliminated three positions—the only two Social Worker IV positions and an Administrative Assistant IV position. At the same time, he retained four vacant Social Worker II positions and created a new Assistant Director position. The net effect of these changes was neutral on the Social Work Department's total salary expenditures.

On December 7, 1996, Lalvani received a letter from Barbara Penn, CCH Director of Human Resources, stating that his employment would be terminated "due to a decrease in budgeted funds for certain departments." The

letter also informed him that he might have recall rights if his position was certified for civil service purposes and if positions for which he was qualified became available. Finally, the letter stated: "Any questions that you may have relative to benefits or reinstatement rights should be addressed in writing to the hospital Department of Human Resources or the Cook County Department of Human Resources." Lalvani wrote to Penn, informing her that he "would like to know what administrative remedies are available" and inquiring whether he had "the option to 'bump' the next lower grade person." In a letter dated December 23, 1996, Penn briefly replied that because his position was not "civil service certified," Lalvani did "not have . . . bumping rights to the next lower grade nor recall rights." She also informed Lalvani that "there were no other employees least [*sic*] senior to [him] in [his] job classification that were not affected by the reduction in force." On January 4, 1997, Lalvani wrote to Penn: "I do know that Cook County Hospital Employees, during the Governing Commission, were under *MERIT SYSTEM, which is equivalent to Civil Service Certified*, hence, I understand that I do have the bumping right to next lower grade." Lalvani received no response to his second communication.

Convinced that Coleman had used the RIF to squeeze him out of the department, Lalvani filed suit. He alleged that his termination resulted from ethnic discrimination, in violation of 42 U.S.C. §§ 1981 and 1983 and Title VII, 42 U.S.C. §§ 2000e *et seq.*, and that it was done in retaliation for his 1989 discrimination complaint, also in violation of Title VII. In addition, he asserted a § 1983 claim alleging that County authorities violated his due process rights when they terminated him. The district court dismissed all of these claims on summary judgment.

We affirmed with respect to the discrimination and retaliation claims, but reversed on the due process claim. See *Lalvani I*, 269 F.3d at 787. With respect to Lalvani's

due process claim, we found that he had "placed suffi-
cient evidence into the record to create a disputed issue
of fact as to whether or not he attained Civil Service
status while CCH was under [the Governing Commission's]
control." *Id.* at 791. If Lalvani could "persuade a jury that
he obtained career employee status while working under
the [Governing Commission]," we explained that our prior
decision in *Carston v. County of Cook*, 962 F.2d 749 (7th
Cir. 1992), resolved in Lalvani's favor the question whether
he had a protected property interest in his employment that
triggered due process protection. *Lalvani I*, 269 F.3d at 792-
93. Thus, "[t]he only remaining question is whether Lalvani
received all the process that would have been due in
connection with his termination." *Id.* at 793. While the
district court had "concluded that the minimal process that
Lalvani received was more than sufficient given that CCH
terminated him as part of a RIF," we found that "a reason-
able jury could conclude that Coleman used the RIF as
pretext for the termination of a career employee," in which
case Lalvani would be entitled to "full-blown due process."
*Id.* at 793-94.

On remand, Lalvani's case went to trial. The jury
found that Lalvani had proved that he held merit em-
ployee status at the time of the transfer of authority of CCH
from the Governing Commission to Cook County. In
response to the second question posed to it, however, the
jury also found that Lalvani had not "proved by a pre-
ponderance of the evidence that Plaintiff was terminated for
cause," and it therefore did not reach the question
of damages. Lalvani filed a motion for judgment as a matter
of law coupled with a motion for a new trial in which he
claimed that the jury instructions and special verdict form
misstated the law. The court denied both motions, holding
that Lalvani had not been denied the process to which he
was entitled under the Due Process Clause. Lalvani now
presents the same arguments to this court.

## II

We review jury instructions to determine if, taken as a whole, they were sufficient correctly to inform the jury of the applicable law. *Fillmore v. Page*, 358 F.3d 496, 508 (7th Cir. 2004). In doing so, "we must first determine whether the instructions in question misstate the law or fail to state it fully. If this requirement is met, we then determine whether the inadequate statements confused or misled the jury causing prejudice to a litigant." *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 759 (7th Cir. 2003); see *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 839 (7th Cir. 2001) ("[W]e will reverse a jury verdict only if we find the error is not harmless, *i.e.,* affected the substantial rights of the parties."). While "[t]here is no idealized set of perfect jury instructions, . . . the instructions must be correct statements of law and supported by the evidence." *Hefferman v. Bd. of Trs.*, 310 F.3d 522, 528 (7th Cir. 2002) (internal citation and quotation marks omitted).

With respect to Lalvani's due process claim, the district court instructed the jury as follows:

> 1) In order for Plaintiff to establish that the County deprived Plaintiff of property without due process, he must show, by a preponderance of the evidence, that: (a) he had a protected property interest in continued employment at Cook County Hospital; and (b) that he was terminated for cause.
>
> * * *
>
> 4) In order for Plaintiff to establish that he was terminated for cause, he must show, by a preponderance of the evidence, that he was discharged as a result of an individualized decision concerning him, and not as a result of the organizational demands of a reduction in the work force instituted by Cook County Hospital.

The jury was then given two "yes or no" questions to

answer on the issue of liability, which it marked as follows:

1. The Plaintiff proved by a preponderance of the evidence that he held merit employee status at the time of the transfer of authority of Cook County Hospital from the Health and Hospitals Governing Commission to Cook County?

   YES [X]      NO [ ]

2. The Plaintiff proved by a preponderance of the evidence that Plaintiff was terminated for cause?

   YES [ ]    NO [X]

The jury's first finding, for the reasons we gave in *Lalvani I,* is enough to establish that Lalvani had a protected property interest in his continued employment at CCH. 269 F.3d at 792-93.

It is the second response and the instructions that correspond to it that cause the problem here. In *Lalvani I*, commenting on the ultimate merits of the case, we rejected the notion that a termination "for cause" and a termination pursuant to a RIF are necessarily mutually exclusive. *Id.* at 793. Emphasizing that "the mere intonation of the acronym 'RIF'" does not have "sweeping constitutional effect," we explained:

> It is true that even public employees with a property interest in their jobs can be terminated without full-blown due process hearings if they are properly terminated during a RIF that is not implemented through individualized decisions about whom to fire. At the same time, however, a government employer cannot avoid its procedural obligations if it is picking specific individuals for lay-off or termination, nor can it *use a RIF to conceal a for-cause dismissal* and thereby deprive a career employee of the procedural protections to which he would otherwise be entitled.

*Id.* (emphasis added) (internal citation omitted).

But the purpose of a due process hearing for an employee with the equivalent of civil service protection is precisely to find out whether the termination under the auspices of a RIF was permissible or not. Under Cook County's view of the case, reflected in the district court's instructions, no one would ever know if he or she was entitled to a due process hearing until somehow it was already clear whether the termination was a legitimate part of the RIF or if the RIF was being used to mask an individualized, merit-based action.

The question whether the process Lalvani received was adequate thus becomes central. In *Lalvani I,* we described that process as follows: "Without prior notice of any kind, Lalvani received a letter stating that his position was to be eliminated within the month. He was invited to inquire by letter regarding any post-termination rights he might have. He sent a letter and received a reply indicating that he had no post-termination rights other than those shared by the general public." 269 F.3d at 793. As we also noted in *Lalvani I*, "in most cases a public employee with a protectable property interest in his or her job who faces for-cause termination 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" *Id.* at 794 (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985)). While the "process—particularly at the pre-termination stage—may be truncated," we said that "[t]he letter Lalvani received did not meet even the minimal standards that apply when a post-termination procedure is available." *Id.*

Based on the jury's finding that Lalvani was not terminated for cause, the district court held that Lalvani was not entitled to a pre-termination hearing and "that the process plaintiff was given with regards to what

he terms as his post-termination rights was sufficient." But the jury should never have been asked to assess the basic right to due process in terms of whether the ultimate decision could stand or not. In the cases discussing the process due an employee terminated pursuant to a RIF, other courts have generally found pre-termination procedures unnecessary, but they have underscored the availability, as well as the importance, of post-termination procedures for affected employees. In *Washington Teachers' Union Local #6 v. Bd. of Educ.*, 109 F.3d 774 (D.C. Cir. 1997), for example, the court considered a due process claim by public school teachers who were terminated in the wake of emergency budget cuts, *id.* at 779. Balancing the factors identified in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the court acknowledged that the teachers' property interest in their jobs "weighs heavily in favor of requiring pre-termination proceedings," but it concluded that the risk of erroneous deprivation was minimal and that pre-termination hearings "would have slowed the RIF process considerably." *Washington Teachers' Union Local #6,* 109 F.3d at 780-81. While the court held that "due process did not require pre-termination proceedings before the [ ] RIF," *id.* at 781, it nonetheless stressed the availability of post-termination relief, including "post-termination hearings if they believe either that their terminations were discriminatory or retaliatory, or that notice and separation procedures were not followed," *id.* at 779. See also *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs.*, 56 F.3d 1469 (D.C. Cir. 1995) (finding university faculty who were denied summer deanship positions had no due process right to pre-termination procedures under the *Mathews* balancing test, but emphasizing their access to an extensive post-deprivation grievance procedure, including investigation by an impartial panel); *Smith v. Sorensen*, 748 F.2d 427, 436 (8th Cir. 1984) (holding that procedures "that were available to the employees after the implementation of the RIF guideline provided such protection of their rights that the

absence of a pretermination hearing alone was not violative of due process").

These decisions essentially stand for the proposition that employees with a protected property interest in their jobs may not be entitled to any pre-termination process in a RIF situation, as long as an adequate post-termination procedure is available to them. As we observed in *Lalvani I*, CCH provided Lalvani with no pre-termination procedures and only the most truncated form of post-termination procedures, if the one letter he received from Penn even deserves the label "procedure." Although Penn's letter informed Lalvani where to direct "[a]ny questions [he] may have," only his first letter to Penn received a response. When he suggested in his second letter that he had merit employee status dating from the period in which the Governing Commission controlled CCH and that this status accorded him certain rights, his inquiry was met with silence. Under *Loudermill,* as well as *Washington Teachers' Union* and *Sorensen,* we conclude that this was not enough. The confusion surrounding the jury's answer to question 2 is, in the final analysis, irrelevant. Its answer to question 1 is unambiguous: Lalvani held merit employee status at the relevant time, and he was thus entitled to due process protection at the time of the RIF. The process he received did not measure up to the minimal standards required. His case must therefore be returned to the district court for further proceedings on the question of damages. Lalvani is entitled to recover at least nominal damages, see *Carey v. Piphus*, 435 U.S. 247, 266 (1978); if he can prove actual damages, he is entitled to recover those amounts also. See also *Codd v. Velger*, 429 U.S. 624 (1977).

## III

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent

with this opinion. Circuit Rule 36 shall apply on remand.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*