UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued October 18, 2006
Decided November 3, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-4501

| | |
|---|---|
| MINERVA ALMAZAN,<br>　　　　*Plaintiff-Appellant,*<br><br>　　　*v.*<br><br>PEPPERIDGE FARMS, INC.,<br>　　　　*Defendant-Appellee.* | Appeal from the United States<br>District Court for the Northern District<br>of Illinois, Eastern Division<br><br>No. 04-C-3714<br><br>Charles P. Kocoras, *Judge.* |

### O R D E R

Minerva Almazan is a native of Mexico who moved to the United States in 1971.  For almost 25 years she worked for Pepperidge Farm, Inc. at its Downer Grove, Illinois, bakery, most recently as a bulk equipment cleaner.  Almazan alleges that she was fired in 2003 on account of her race and was the victim of retaliation, in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981.  The district court granted Pepperidge Farm's motion for summary judgment on Almazan's claims.  Because we agree with the district court that there is no triable issue of material fact and that Almazan has failed to establish a prima facie case of either unlawful termination or retaliation, we affirm its judgment.

Pepperidge Farm says that Almazan was terminated for taking things from the company cafeteria without paying for them.  Workers at the Downers Grove

bakery had access to a company cafeteria where they could purchase food and beverage items. Because the cafeteria is understaffed, there are occasions when no cashier is present to charge employees for their purchases. As a result, some employees leave money on the counter or depart altogether and pay for their items at a later time. In an effort to curb this practice, Amber Bloomquist, the employee relations manager at the bakery, posted signs directing cafeteria employees "to ring every purchase to keep track of purchases and inventories." Another employee, Lynn Fox, anonymously reported that Almazan was not paying for her cafeteria purchases, and Bloomquist began monitoring Almazan and asking cafeteria employees about her conduct. After confirming with these workers and observing herself that Almazan generally did not pay for cafeteria items, Bloomquist met with her and presented these allegations. Almazan offered no denial and was terminated. She now admits to sometimes taking items without paying but insists that she would always pay later.

We analyze the Title VII and § 1981 claims together in an unlawful termination suit because a prima facie case under either is predicated on the same elements. Lalvani v. Cook County, Ill., 269 F.3d 785, 789 (7th Cir. 2001). To survive a motion for summary judgment in a discrimination case, a plaintiff must either offer direct evidence of discrimination or establish a prima facie case that shifts the burden of proving it acted without an improper motive to the employer under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Almazan focuses solely on the indirect method, which requires her to establish that: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employee action; and (4) other employees similarly situated who were not members of the protected class were treated more favorably. See Davis v. Con-Way Transp. Cent. Express, Inc., 368 F.3d 776, 784 (7th Cir. 2004). There is no dispute that Almazan is a member of a protected class and that she suffered an adverse employee action.

But we fail to see how Almazan has established either of the remaining elements. It is certainly legitimate for an employer to expect that its employees will not take food and other items from a company cafeteria without paying for them, and Almazan has presented no triable issue of material fact that indicates that she was not violating this policy. On the contrary, there are multiple firsthand accounts that Almazan engaged in this conduct, and when confronted with these allegations, she never denied them. Similarly, Almazan has provided no basis for concluding that similarly situated non-Hispanic employees were treated more favorably. The record names four other employees in addition to Almazan who were caught taking items from the company cafeteria without paying for them: none of

them were Hispanic, and all of them were terminated for their conduct--just as Almazan was.

Almazan's retaliation claim under 42 U.S.C. § 2000e-3 stems from a meeting she had with the bakery's human resources manager at some point prior to her termination. At that meeting, Almazan complained about her treatment by her supervisor, Bill Paglia, who had met with Almazan and asked her to put forth 110 percent effort in completing her work. Almazan did not feel that other employees had been asked to do the same and specifically mentioned Ms. Fox, who is Caucasian, and who Almazan believed was getting a comparatively free pass from Paglia. The parties dispute when exactly these events took place. Almazan cannot recall the exact dates but says they were less than 2 months prior to her termination. Pepperidge Farm says that it was nearly 2 years earlier.

Almazan alleges that her termination was in retaliation for her complaints about Paglia in that meeting. The district court awarded summary judgment to Pepperidge Farm based primarily on its determination that Almazan had neither offered direct or circumstantial evidence from which a jury could infer retaliation, nor established a prima facie case of retaliation under the indirect, burden-shifting approach of McDonnell Douglas Corp. But we need not review that analysis because, as the district court itself noted, even if Almazan has successfully established all of the necessary elements to make out a prima facie case, an "employer is entitled to summary judgment unless there is a material issue of fact as to whether the employer's non-invidious reason is pretext for retaliation." Hudson v. Chicago Transit Auth., 375 F.3d 552, 559 (7th Cir. 2004).

Here, Almazan has offered nothing to suggest that Pepperidge Farm's stated reason for firing her--Almazan's repeated taking of items from the cafeteria without paying for them--was pretextual. Pepperidge Farm had a clear policy against taking food and drink from the cafeteria without paying for it, had posted signs informing employees of this policy, and had previously terminated other non-Hispanic and nonminority workers for breaking these rules. As we have said: when confronted with accusations that she had been taking items and not paying for them, Almazan never denied that she had done so. Pepperidge Farm's stated basis for terminating Almazan's employment is entirely credible in light of these facts, such that no reasonable fact finder could believe that retaliation was the real motive.

For these reasons, the judgment of the district court is AFFIRMED.