In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1124

DWAINE K. HICKS,

*Plaintiff-Appellee*,

*v.*

FOREST PRESERVE DISTRICT OF COOK COUNTY, ILLINOIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CV 00261—**Edmond E. Chang**, *Judge.*[*]

ARGUED NOVEMBER 30, 2011—DECIDED APRIL 18, 2012

Before MANION, WILLIAMS, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Dwaine K. Hicks worked as a mechanic for two years at the Forest Preserve District (the "FPD") of Cook County's Central Garage, where he primarily repaired trucks. During his time there, he

---

[*] Prior to his retirement on December 31, 2010, Judge David H. Coar issued several rulings in this case, including the decision to give the challenged instruction.

received twenty-eight disciplinary action forms from his supervisor. Hicks, who is black, participated in an investigation of discrimination leveled against his supervisor, and later filed his own discrimination complaint against the supervisor. Eventually the FPD offered Hicks a choice: either accept a demotion to a non-mechanic position and take a significant pay cut, or face further disciplinary action up to and including termination. On the advice of his union representative, Hicks took the demotion, but then brought suit against the FPD for retaliation. Hicks's case survived a summary judgment motion, and at trial the jury found in favor of Hicks. Hicks was awarded $30,000 and was reinstated to his former position as a mechanic. The FPD moved for judgment as a matter of law, but the district court denied its motion. It now appeals, arguing that the evidence presented at trial was insufficient to support a retaliation claim, that the district court erred by improperly instructing the jury, and that the district court erred when it reinstated Hicks to his former position. For the reasons below, we affirm the district court's order.

## I.

Dwaine Hicks began working as a maintenance mechanic for the FPD on September 1, 2006. The Central Garage supervisor who oversaw Hicks's work was Thomas Thompson. While working under Thompson, over the course of two years Hicks received a total of twenty-eight "disciplinary action forms" either directly from Thompson or with Thompson's approval, because

Thompson believed that Hicks was an unqualified mechanic who took too long to complete tasks, failed to repair vehicles correctly, and doctored timekeeping records. However, Hicks, who is black, consistently complained that Thompson treated him differently than the other non-minority mechanics, discriminating against him by not allowing him to order his own parts for vehicles, only allowing him to work on trucks (and only on old trucks in poor repair), and then disciplining him for taking too long to repair the vehicles. Hicks believed that Thompson created false disciplinary action forms to force Hicks out of his job.

In November 2006, a few months after Hicks began working in the Central Garage, a fellow mechanic who is Hispanic, Gronimo Hernandez, filed an internal complaint alleging racial discrimination by Thompson. In February 2007, Hernandez filed a complaint against the FPD with the Cook County Commission on Human Rights, once again alleging racial discrimination and retaliation based on Thompson's behavior. The Commission initiated an investigation into Thompson's alleged discrimination, in which Hicks participated on Hernandez's behalf. In November 2007, Hicks filed his own complaint with the Commission, alleging that Thompson retaliated against him for participating in the Hernandez investigation. Hicks also filed a complaint with the Equal Opportunity Employment Commission ("EEOC") against the FPD, likewise alleging retaliation and racial discrimination.

The situation came to a head in August 2008 after

Thompson cited Hicks for three infractions in one day: for falsification of employment records for Hicks's alleged failure to accurately report the time he worked on a vehicle; for "negligence in performance of duties"; and for performing "at less than a satisfactory level." Hicks's union representative, Jack Hurley, received copies of these disciplinary action forms and contacted the director of the FPD's human resources department to ask if anything could be done for Hicks short of termination; the director, Carmen Sanchez-Bass, said she would look into it. On September 9, 2008, the FPD held a meeting to determine Hicks's future. Hicks, Hurley, Sanchez-Bass, Keino Robinson (an attorney for the FPD), Leroy Taylor (a maintenance superintendent), Frank Mole (an assistant maintenance superintendent), and William Helm (the executive assistant to the superintendent) were in attendance. Robinson told Hicks that the FPD had reviewed his job performance record (which consisted of the twenty-eight disciplinary action forms created or authorized by Thompson) and had found his performance unsatisfactory. Robinson then informed Hicks that management believed he should be in a "serviceman II" position, an unskilled position that paid $9 less per hour than his former position as a mechanic (which paid $29.621 per hour).

Robinson explained that Hicks could either accept the demotion and the FPD would ignore the last few citations by Thompson, or Hicks could challenge the citations at a different hearing, at which time the FPD would pursue further disciplinary action against Hicks up to and including termination. Hurley spoke to

Hicks privately and stated his opinion that the FPD was not trying to fire Hicks but rather to offer him a way out. The FPD then gave Hicks one day to respond, during which Hicks discussed the situation with his wife. The next day, Hicks told the FPD that the offer was "an insult," but he accepted the demotion, noting the bad state of the economy and the need to keep his insurance. Hicks signed a letter authored by the Human Resources Director acknowledging his demotion to serviceman II, with a new pay rate of $20.426 per hour. His new duties included cutting grass, removing snow, and other landscaping work, quite different from his former duties as mechanic.

Hicks filed a complaint with the EEOC almost immediately after his demotion. The EEOC issued a right-to-sue letter in October 2008, and this lawsuit followed shortly thereafter. At the close of discovery, the FPD moved for summary judgment, but the district court denied the motion, largely on the strength of an affidavit by Joseph Hruska, the intermediate supervisor between Hicks and Thompson. In his affidavit, Hruska stated that as soon as he began working at the Central Garage, Thompson told him that there were two employees—Hicks and Hernandez—who "needed to be fired" because they had filed charges of discrimination against Thompson. Hruska further stated that two management-level employees—Richard Wagner (the superintendent) and Richard Bono (a manager)—also told him, on multiple occasions, that the FPD wanted to "get rid of" Hicks and Hernandez for filing charges against the FPD.

At trial, Hruska reiterated what he said in his affidavit,

testifying that Thompson and Bono told him that Hicks and Hernandez "needed to be gotten rid of" because they had filed charges of discrimination against Thompson. Hruska added that he understood the phrase "gotten rid of" to mean "terminated." Hruska testified that he understood that the FPD had hired him to ensure that Hernandez and Hicks "were gotten rid of." He also testified that Thompson directed him to "write up Dwaine Hicks any time, all the time, every time basically. Anything he did that was incorrect or if he ordered a part incorrectly or if he worked too long on a project to write him up."

At the close of Hicks's case, the FPD moved for judgment as a matter of law on the retaliation claim, but the district court denied that motion. The jury found for Hicks and awarded him $30,000 and the district court ordered the FPD to reinstate Hicks to his former position. The FPD renewed its motion for judgment as a matter of law, but this was again denied. On appeal, the FPD now argues that it is entitled to judgment as a matter of law because Hicks failed to present sufficient evidence that he suffered an adverse employment action. Alternatively, the FPD seeks a new trial on the grounds that the district court improperly instructed the jury. Finally, the FPD argues that the district court erred when it reinstated Hicks to his former position, and seeks to have Hicks's reinstatement rescinded.

## II.

## A.

We first consider the FPD's arguments that it is entitled to judgment as a matter of law. We review a district court's decision to deny a motion for judgment as a matter of law de novo. *Harvey v. Office Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004). Our review is limited to determining only whether any rational jury could have found for the plaintiff, examining all evidence in the record to make that determination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 630 (7th Cir. 1996). "We are required to draw all reasonable inferences in favor of the nonmoving party . . . and we do not weigh the evidence or make credibility determinations." *Harvey*, 377 F.3d at 707. "Our job at this stage is not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict." *Id.*

The FPD argues that no rational jury could have found for Hicks because he did not present sufficient evidence at trial on his retaliation claim. To prevail on a retaliation claim, a plaintiff must prove by a preponderance of the evidence (1) that he opposed an unlawful employment practice; (2) that he suffered an adverse employment action; and (3) that the adverse employment action was caused by his opposition to the unlawful employment practice. *Hall v. Forest River*, 536 F.3d 615, 619 (7th Cir. 2008); *David v. Caterpillar, Inc.*, 324 F.3d 851,

858 (7th Cir. 2003). The FPD argues that Hicks failed to meet prongs two and three of the test.[1]

For the second prong, the FPD asserts that the evidence presented at trial showed that Hicks voluntarily accepted his demotion to the serviceman II position, and because the demotion was voluntary, there was no materially adverse employment action. The FPD points to the fact that Hicks was represented by union counsel when the demotion was offered to him, that he had an opportunity to discuss the demotion with his wife before accepting it, and that he had the option to remain in his mechanic position and challenge any further disciplinary action the FPD might take against him.

To establish that a materially adverse employment action has been taken, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006). A demotion to a different position that pays significantly less than the former position is certainly materially adverse. *Tart v. Ill. Power Co.*, 366 F.3d 461, 475 (7th Cir. 2004) (noting that "courts have found the criteria for materially adverse employment action to be met" where the "em-

---

[1] The FPD does not contest the first prong—that Hicks opposed an unlawful employment practice (Thompson's alleged discrimination against Hernandez) through his participation in the complaints and investigation into Thompson. This qualifies as a protected activity for purposes of Title VII. *See David*, 324 F.3d at 858.

ployee's compensation, benefits or other financial terms of employment are diminished . . . ."). The FPD relies on *Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873 (7th Cir. 1999), to make its argument that Hicks's demotion was voluntary, but that reliance is misplaced. While we held in *Borg-Warner* that a demotion taken voluntarily is not an adverse employment action, *see id.* at 876, the plaintiff in *Borg-Warner* specifically requested a demotion and turned down a transfer to a different supervisory position. *Id.* Here, Hicks did not request or even acknowledge a need for a demotion; he was given a choice between taking a demotion or staying in his present role to face further disciplinary action up to termination. Hicks testified that he had no choice but to accept the demotion because he believed that he would be fired if he did not, and the FPD made it clear to Hicks that it would seek to terminate him if he did not accept the demotion. Such a choice could be said to be no choice at all, and the jury agreed. Thus, Hicks presented sufficient evidence at trial for a reasonable jury to find that his demotion was involuntary.

The FPD also argues that Hicks failed to meet the third prong of a retaliation claim, causation, because he did not present sufficient evidence that he was demoted because of his participation in a protected activity. The FPD bases this argument on two principal points: (1) that twenty-two months elapsed between the time Hicks participated in the investigation of Hernandez's discrimination complaint against Thompson and the time that Hicks was demoted; and (2) that the individuals who offered Thompson the demotion (Carmen Sanchez-Bass,

Keino Robinson, and William Helm) had no retaliatory animus toward Hicks.

The FPD principally relies on two previous cases where we held that a reasonable fact-finder could not infer that an adverse employment action was causally related to participation in a protected activity when long periods of time separated the two events. *See Everroad v. Scott Truck Sys.*, 604 F.3d 470 (7th Cir. 2010), and *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524 (7th Cir. 2004). In *Haywood*, the plaintiff was terminated a year after she filed a complaint of discrimination at her workplace. We held that "[t]his time period is far too long—at least on this record—to allow a reasonable fact-finder to infer that her termination was causally related to the filing of her complaint." *Haywood*, 323 F.3d at 532. Likewise, we held in *Everroad* that in the absence of other causation evidence, a year elapsing between a protected activity and an adverse employment action was too long to establish a causal connection between the two. *Everroad*, 604 F.3d at 481.

The FPD's reliance on these cases is misplaced. The holdings of both *Haywood* and *Everroad* are factually distinct from this case, as each stress that the absence of evidence other than the plaintiffs engaging in a protected activity compelled rulings in favor of the defendants. In both cases, the plaintiffs relied on indirect evidence to establish causation, rather than direct evidence. In contrast, here Hicks put forth direct evidence of causation, primarily via Hruska's testimony at trial. Hruska testified that Thompson told him that Hicks and

Hernandez needed to be fired because they had filed charges of discrimination against Thompson, and this constitutes direct evidence that Hicks was demoted because he engaged in a protected activity. While the FPD assails Hruska's credibility as a witness, pointing out that he had only worked with Hicks for a little over three months before he himself was fired (only a few days before Hicks was demoted), it is not for us to make determinations regarding Hruska's credibility. That task lay with the jury, and we will not second-guess them. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

The FPD misunderstands the role a "suspicious timing" argument plays in retaliation cases. When employing a direct-proof method, as Hicks did here, "a plaintiff may offer circumstantial evidence of intentional retalia-tion, including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn.*" Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007). The "suspicious timing" argument seeks to prove that an adverse employment action was caused by the plaintiff's opposition to an unlawful employment practice because the opposition and subsequent adverse action were close in time. When the plaintiff uses this fact alone to prove causa-tion, generally he or she must demonstrate that "an adverse employment action follows close on the heels of protected expression . . . ." *Lalvani v. Cook Cnty.*, 269 F.3d 785, 790 (7th Cir. 2001). But Hicks does not employ

a "suspicious timing" argument here; rather, he points to the direct evidence of retaliatory animus presented at trial via Hruska's testimony.[2] The FPD's arguments on this point are thus mistaken. Furthermore, as the district court noted in its order denying the FPD's motion for judgment as a matter of law, there are no bright-line rules to apply when considering the temporal proximity of adverse actions to protected activities because it is a fact-intensive analysis. While close timing between a plaintiff engaging in a protected activity and then suffering an adverse employment action is useful evidence to establish a causal link between the two events, the law does not require there to be close timing where, as here, direct evidence is used to establish causation. *See id.* 790-91.

---

[2] By the time Hruska began working at the Central Garage, nearly a year and a half after Hernandez filed his discrimination complaint against Thompson, any "suspicious timing" was an afterthought. According to Hruska's testimony at trial, Richard Bono (an FPD manager) told Hruska that Hicks and Hernandez needed "to be gotten rid of" because they had filed discrimination charges against Thompson. When Hruska asked Thompson about the complaints, he verified that Hicks and Hernandez had filed charges against him and that "they needed to be gotten rid of." Thompson also directed Hruska to "write up Dwaine Hicks any time, all the time, every time basically. Anything he did that was incorrect or if he ordered a part incorrectly or if he worked too long on a project to write him up." This testimony proved fatal to the FPD's defense.

The FPD next argues that, because the individuals who offered Thompson the demotion (Carmen Sanchez-Bass, Keino Robinson, and William Helm) had no retaliatory animus toward Hicks, he cannot show as a matter of law that he was demoted in retaliation for engaging in a protected activity. Hicks responds that the colloquially named "cat's paw" theory[3] of liability imputes Thompson's retaliatory animus against Hicks to the decisionmakers who ultimately offered Hicks the demotion. The Supreme Court recently held that the "cat's paw" theory applies as follows: "if a supervisor performs an act motivated by [a discriminatory or re-taliatory] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable . . . ." *Staub*, 131 S. Ct. at 1194. Thus, it is appropriate to impute discriminatory or retaliatory animus to a decisionmaker when the

---

[3]  In *Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011), the Supreme Court explained the origin of the unusual name as follows: "The term 'cat's paw' derives from a fable conceived by Aesop, put into verse by La Fontaine in 1679, and injected into United States employment discrimination law by Posner in 1990. *See Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990). In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from the fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing." *Staub*, 131 S. Ct. at 1190 n.1. For further discussion, *see Cook v. IPC Int'l Corp.*, ___ F.3d ___, No. 11-2502, 2012 WL 739303, at *2-3 (7th Cir. Mar. 8, 2012).

"party nominally responsible for a decision is, by virtue of her role in the company, totally dependent on another employee to supply the information on which to base that decision*." Brewer v. Bd. of Trustees of the Univ. of Ill.*, 479 F.3d 908, 918 (7th Cir. 2007).

Hicks presented sufficient evidence at trial for the jury to find that the FPD officials based their decision to offer Hicks the demotion on the twenty-eight disciplinary action forms he received either directly from Thompson or with Thompson's approval. While Thompson himself did not participate in the hearing at which Hicks was offered the demotion, Thompson submitted the disciplinary action forms to Sanchez-Bass. Her testimony at trial indicated that she relied on the forms when offering Hicks the choice between accepting the demotion or facing further disciplinary action, including termination. The jury found that Thompson had a retaliatory animus against Hicks, and since Sanchez-Bass and the other FPD officials who demoted Hicks were "dependent on another employee to supply the information on which to base" their decision, his animus can be imputed to the FPD under the "cat's paw" theory. *Brewer*, 479 F.3d at 918. Therefore, Hicks put forth sufficient evidence to support the jury's decision on the retaliation claim.

**B.**

We next consider the FPD's argument that it is entitled to a new trial because the district court used an improper jury instruction. "We review jury instructions

de novo to determine whether, taken as a whole, they correctly and completely informed the jury of the applicable law." *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007). Ultimately, however, our "review of jury instructions is limited." *Knox v. State of Indiana*, 93 F.3d 1327, 1332 (7th Cir. 1996). We must determine whether the court abused its discretion when it denied the FPD's motion for a new trial. *Id.* If the instructions are found to be deficient, we determine whether the jury was confused or misled by the instructions. *Gile v. United Airlines*, 213 F.3d 365, 375 (7th Cir. 2000). Even if we believe that the jury was confused or misled, we must find that the FPD was prejudiced before ordering a new trial. *Id.*

The FPD argues that the instruction given by the district court inadequately stated Seventh Circuit law and that the FPD was prejudiced by the instruction. The district court instructed the jury as follows:

> Plaintiff Dwaine Hicks claims that the Forest Preserve District of Cook County, Illinois took adverse employment action(s) against him in retaliation for his cooperation with the investigations of Gronimo Hernandez's complaint(s) of discrimination. For purposes of this instruction, an adverse employment action is any action directed toward an employee which would reasonably discourage him from cooperating in the investigation of a charge of discrimination.

> In order to find that the Forest Preserve District took adverse employment action(s) against Dwaine Hicks, you must find the following:

1. that Dwaine Hicks cooperated in the investigation [sic] Gronimo Hernandez's complaint(s) of discrimination;

2. that the Forest Preserve District took adverse action(s) against Hicks, and

3. that had Hicks not cooperated in the investigation of the Hernandez complaint(s) of discrimination, the adverse action(s) taken would not have been taken.

If you find that Hicks has proved all of these things by a preponderance of the evidence, you must find for Hicks.

If you find that Hicks has failed to prove any of these things by a preponderance of the evidence, then your verdict must be for the Forest Preserve District.

The district court based this jury instruction on language from a Ninth Circuit Model Civil Jury Instruction instead of the Seventh Circuit's model instruction on retaliation. In essence, the given instruction merely stated that Hicks had to show that he suffered an adverse employment action because he cooperated in the investigation of Hernandez's discrimination complaint, whereas if the district court had used the model Seventh Circuit instruction, the instruction would have identified the specific adverse action Hicks suffered—to wit, his demotion.[4] The FPD contends that because the instruction

---

[4] The pattern civil jury instruction for retaliation in the Seventh Circuit is as follows:

(continued...)

did not specifically identify Hicks's demotion as the adverse employment action he suffered, the instruction misstated Seventh Circuit law.[5]

  This argument underscores why, when we review jury instructions, "we are not looking for an idealized set of perfect jury instructions. Instead . . . we construe them in their entirety to determine if the instructions as a whole are sufficient to inform the jury correctly of the applicable law." *Knox*, 93 F.3d at 1333 (7th Cir. 1996). Though the Model Civil Jury Instruction for re-taliation in the Seventh Circuit includes a reference to the specific adverse action taken by the employer, there

---

[4] (...continued)

> Plaintiff claims that he was [*adverse action*] by Defendant because of [*protected activity*]. To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that Defendant [*adverse action*] him because of his [*protected activity*]. To determine that Plaintiff was [*adverse action*] because of his [*protected activity*], you must decide that the Defendant would not have [*taken adverse action against*] Plaintiff if he had [*not engaged in protected activity*] but everything else had been the same.

> If you find that Plaintiff has proved this by a preponderance of the evidence, then you must find for Plaintiff. However, if you find that Plaintiff did not prove this by a preponder-ance of the evidence, then you must find for Defendant.

FEDERAL CIVIL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT, § 3.02 (2009).

[5]   The Ninth Circuit model instruction also called for a specific identification of the adverse action.

is no case law *mandating* that a retaliation instruction include the specific adverse action. For clarity's sake, however, we think it would be helpful to include it. While we think it was unnecessary and probably misguided for the district court to model an instruction using language developed in a different circuit, it is certainly not an error compelling a new trial. A district court enjoys wide latitude in crafting jury instructions, and as long as those instructions do not "misstate the law or fail to convey the relevant legal principles in full," they will stand. *Byrd v. Ill. Dep't of Pub. Health*, 423 F.3d 696, 705 (7th Cir 2005). The instruction given by the district court here accurately states what a plaintiff must prove to prevail on a retaliation claim, and the FPD is not entitled to a new trial.

Furthermore, we find no evidence of jury confusion. The FPD argues that the absence of the specific adverse action in the instruction could have confused the jury by allowing it to think that the twenty-eight disciplinary action forms filed against Hicks cumulatively constituted the adverse action. We find this argument unpersuasive. The trial focused on Hicks's demotion, and in the choice between twenty-eight citations at work or a demotion to a different position with a concurrent $9 per hour cut in pay, no reasonable juror could be confused about which action was the adverse action at issue. Since the district court did not misstate the applicable law and there is no evidence that the jury was misled or confused, the FPD is not entitled to a new trial.

## C.

Finally, the FPD challenges the district court's order to reinstate Hicks to his former position as a maintenance mechanic at the Central Garage. We review a district court's decision to impose the equitable remedy of reinstatement for an abuse of discretion. *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 861 (7th Cir. 2001). The decision is "consigned to the sound discretion of the district court." *Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1045 (7th Cir. 1994). The FPD argues that Hicks's former position has been filled and that if Hicks returns to his position at the Central Garage, he would be supervised again by Thompson, with whom he has a decidedly less-than-ideal working relationship. But the remedial purpose of Title VII is to place the victim "where they would have been were it not for the unlawful discrimination." *Id*. And reinstatement is "the preferred remedy for victims of discrimination, and the court should award it when doing so is feasible." *Bruso*, 239 F.3d at 862. While the relationship between Hicks and Thompson may be acrimonious, Hicks specifically requested reinstatement, and we have ruled that mutual dislike between an employer and an employee is not a satisfactory reason to deny reinstatement. *See Price v. Marshall Erdman & Assocs.*, 966 F.2d 320, 325 (7th Cir. 1992). Furthermore, we must be careful "not to allow an employer to use its anger or hostility toward the plaintiff for having filed a lawsuit as an excuse to avoid the plaintiff's reinstatement." *Bruso*, 239 F.3d at 851. Also, the district court correctly noted that making the victim of discrimination whole

ordinarily requires reinstating him, even if that re-
quires pushing out someone who was hired to fill the
plaintiff's old position. *See Bruno v. Crown Point, Ind.*, 950
F.2d 355, 360 (7th Cir. 1991). The district court is in a
better position to evaluate whether reinstatement is an
appropriate remedy, and we find no abuse of discre-
tion by the district court when it ordered Hicks
reinstated to his maintenance mechanic position.

### III.

Hicks presented sufficient evidence at trial for a rea-
sonable jury to find that he was demoted in retaliation
for engaging in a protected activity. The district court's
jury instruction on retaliation, though worded differently
than the model Seventh Circuit instruction, accurately
informed the jury of the applicable law, and we see no
evidence that the jury was confused or misled by the
instruction. We can find no abuse of discretion in the
district court's decision to reinstate Hicks to his former
position. For the reasons articulated above, the district
court's order denying the FPD's motion for judgment as
a matter of law is AFFIRMED, the FPD's request for a
new trial is DENIED, and the FPD's request to rescind
Hicks's reinstatement is DENIED.