In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-3335

REGINA GWYNN BAINES,

*Plaintiff-Appellant,*

*v.*

WALGREEN CO.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 15-CV-258 — **Nancy Joseph**, *Magistrate Judge.*

ARGUED MARCH 28, 2017 — DECIDED JULY 12, 2017

Before FLAUM, KANNE, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This appeal provides an example of circumstantial evidence that allows a reasonable inference that an employer acted with unlawful intent. Plaintiff Regina Baines alleges that when her former employer Walgreens refused to rehire her in 2014, it intentionally retaliated against her for complaining about race discrimination several years earlier. Baines sued Walgreens for retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. The district

court granted summary judgment for Walgreens. The court said it found no evidence linking Baines' protected activity (filing EEOC charges) and Walgreens' adverse employment actions (failing to rehire her).

We reverse. While Baines did not offer direct evidence of a causal link, she offered sufficient circumstantial evidence to satisfy the summary judgment standard. She offered evidence that the manager who handled her earlier EEOC charges intervened in the 2014 decision not to rehire her, and that she did so in ways that deviated significantly from Walgreens' standard hiring procedures. Walgreens offers no explanation for this unusual behavior. It insists instead on its own version of events. That approach might work in a trial, but it cannot sustain summary judgment. Other circumstantial evidence includes missing records of Baines' application and her interview scores, a decision to hire instead someone less qualified, and dishonest answers from Walgreens decision-makers when asked to explain their decisions. If a jury believes Baines' evidence, it could reasonably find that Walgreens unlawfully retaliated against her.

I.   *Factual and Procedural Background*

   A.  *Employment and EEOC Charges in 2007–2009*

On appeal from a grant of summary judgment, we accept as true the evidence offered by the non-moving party and we draw all reasonable inferences in her favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). In February 2005, Regina Baines began working as a pharmacy technician at a Walgreens store in Milwaukee, Wisconsin. She worked there

until approximately October 2008, when she received authorization to transfer to a Walgreens location in Atlanta, Georgia. When she arrived in Atlanta, however, there was "no work."

Baines filed her first EEOC charge against Walgreens in July 2007 when she was working at a Milwaukee store. Baines is black, and she alleged that Walgreens discriminated against her because of her race. After she filed the charge, several Walgreens managers met with her to discuss the matter. The meeting was tense. Baines testified in her deposition that a pharmacy supervisor said that "what I had done was bigger than me, and that I didn't know what I had done." The supervisor said that she had "messed up" and that "this is much bigger" than Baines realized.

One manager at the meeting was Michelle Birch, the district manager responsible for the Milwaukee store where Baines worked. Birch supervised approximately twenty or thirty stores for the company, and she generally focused on retail operations, not pharmacy management. During the meeting, Birch asked Baines what she wanted. Baines said she wanted to be promoted to "senior technician" and transferred to a different store in Milwaukee. Baines received neither, and in October 2007 she filed a second EEOC charge, this time alleging retaliation.

Baines later sought and received approval to transfer to a Walgreens location in Atlanta, Georgia. When she arrived and found no work, though, Baines filed her third EEOC charge in January 2009, this time with the EEOC in Georgia. She alleged that Walgreens was retaliating against her because of her previous EEOC filings. The record does not explain how any of these EEOC charges were ultimately resolved. Baines later moved back to Wisconsin.

B. *Failure to Rehire in 2014*

In July 2014, Baines applied for a pharmacy technician position with Walgreens in Wauwatosa, Wisconsin. The Wauwatosa store was looking for pharmacy technicians, and pharmacy supervisor Hannah Ruehs managed the hiring process. Ruehs was generally permitted to hire candidates for these jobs at her sole discretion.

Baines called and discussed the pharmacy technician opening with Ruehs by telephone on July 23, 2014. Ruehs said that she would review Baines' application and contact her if she had done sufficiently well on her assessment test. Ruehs called her back, and Baines interviewed with Ruehs and another Walgreens employee the next day. The day after that, July 25, Ruehs left Baines a voicemail saying that she had selected someone else for the position.

It is not clear whether Ruehs had more than one pharmacy technician position to fill, but several days after telling Baines that the position was filled, Ruehs interviewed and hired Lisa Martin as a pharmacy technician. Martin had less experience than Baines at that time—in fact, Baines was the only applicant who had prior experience working as a Walgreens pharmacy technician. Also, as it turns out, Martin is Baines' cousin. After Martin was hired, she worked at Walgreens for approximately thirteen months under the supervision of Ruehs.

Martin testified in her deposition that Ruehs told her in February 2015 that she did not hire Baines because district manager Michelle Birch had intervened. Martin testified that Ruehs said she had wanted to hire someone named "Regina" around the time that Martin was hired. Plaintiff Baines was the only person named Regina who applied to the Wauwatosa

Walgreens for a pharmacy technician position at that time. According to Martin, Ruehs said that she "really liked" Regina and she "really wanted to hire her." However, Ruehs told Martin: "You didn't hear this from me, but I was told from higher up, Ms. Birch, that I could not hire her." Ruehs said she did not know why Birch forbade her from hiring Baines.

C. *Procedural History*

After Walgreens chose not to rehire Baines in July 2014, she filed a fourth EEOC charge against the company. She alleged that Walgreens retaliated against her because of her previous EEOC filings. During the EEOC investigation, Ruehs told the investigator that she did not know Regina Baines and that she had not interviewed her. After she was confronted with a recording of the voicemail she had left Baines on July 25, 2014, however, Ruehs acknowledged that she had interviewed Baines.

During the investigation, the EEOC asked Walgreens for its records from the hiring process for the pharmacy technician position. Walgreens used hiring software that generated five or six structured questions to ask interviewees. After the interview, the interviewers gave the interviewee a score and then were required to enter the scores in the computer. Ruehs testified that after an interview, she and another manager would enter the scores into the computer right away and she would then discard her notes. Walgreens does not dispute that Ruehs interviewed Baines and took notes during the interview. When Walgreens provided its interview records, however, all information about Baines was missing. Her name was not even on the list of interviewees, and her interview scores were gone. Walgreens has not explained why or how Baines' interview information came to be missing.

The EEOC eventually issued a right to sue letter, and Baines brought this federal suit alleging that Walgreens retaliated against her in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. After discovery, Walgreens moved for summary judgment, and the court granted its motion. The court held that Baines failed to establish a causal connection between her protected activity (filing the earlier EEOC charges) and Walgreens' adverse employment action (failing to rehire her in 2014). The court assumed Martin's testimony about what Ruehs had told her was admissible, but explained: "Martin did not testify that Ruehs told her that Birch did not hire Baines because of the prior EEOC complaints. Martin's testimony, thus, falls short of a showing that Birch was aware of the 2007 and/or 2009 EEOC charges in 2014 and did not hire Baines because of discriminatory animus." The court also noted that a number of years had passed between Baines' EEOC charges and the alleged retaliation in 2014, and that the time gap weakened the causal inference that Walgreens failed to rehire Baines because of her prior charges.

II. *Analysis*

   A. *Legal Standards*

We review *de novo* the district court's grant of summary judgment. *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 336 (7th Cir. 2012). We construe all facts and draw all reasonable inferences in a light most favorable to the non-moving party. *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005). Summary judgment is proper if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (in-

cluding those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Magin*, 420 F.3d at 686.

Baines claims that Walgreens retaliated against her in violation of § 1981 and Title VII when it failed to rehire her in 2014. We generally use the same standard to review discrimination and retaliation claims under § 1981 and Title VII, and we do so here. See *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007) (collecting cases), aff'd, 553 U.S. 442 (2008) (recognizing retaliation claims under § 1981).[1] To survive summary judgment on her retaliation claim, Baines had to offer evidence of "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Id.* Filing an EEOC charge is a protected activity, and failing to hire is a materially adverse employment action. The issue is whether there was a causal connection between Baines' EEOC charges and Walgreens' decision not to rehire her.

A plaintiff demonstrates a causal connection by showing that the defendant "would not have taken the adverse … action but for [her] protected activity." *Greengrass v. International Monetary Systems Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015), quoting *King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir. 1999). Direct evidence, such as an admission by the employer

---

[1] One important difference between the two statutes is that claims under § 1981 are not subject to the damage caps in 42 U.S.C. § 1981a that apply to Title VII claims. See § 1981a(b)(4); see also *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1062 (8th Cir. 1997) (collecting cases).

of unlawful animus, is sufficient but rare. A plaintiff may "also supply the causal link through circumstantial evidence from which a jury may infer intentional discrimination." *Id.*, citing *Stephens v. Erickson*, 569 F.3d 779, 787 (7th Cir. 2009). "If [a] plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate." *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013). The district court strayed off course here when it said Martin's testimony was insufficient to show retaliatory intent because she did not testify that Ruehs said Baines was not rehired because of her earlier EEOC filings. The absence of such a direct admission of unlawful intent does not mean the plaintiff cannot meet her burden with circumstantial evidence.

B. *Admissibility of Martin's Testimony*

Before addressing the merits of Baines' claim, we first address Walgreens' argument that the critical portion of Martin's testimony is inadmissible hearsay. Evidence offered at summary judgment must be admissible to the same extent as at trial, at least if the opposing party objects, except that testimony can be presented in the form of affidavits or transcripts of sworn testimony rather than in person. See Fed. R. Civ. P. 56(c)(2); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742–43 (7th Cir. 1997). The critical portion of Martin's testimony was that Ruehs told her in 2015 that she had wanted to hire "Regina" (Baines) in 2014 but that district manager Birch had told Ruehs she could not hire Baines.

While Walgreens agrees that Martin may testify about what Ruehs told her about Ruehs' own thoughts, it argues

that Martin may not testify about what *Birch* told Ruehs. According to Walgreens, this is a "classic example of hearsay within hearsay," so that the innermost layer of hearsay (Birch's statement to Ruehs) is inadmissible. If this were correct, Martin's testimony about what Birch said to Ruehs could not be considered. See *Eisenstadt*, 113 F.3d at 742.

Walgreens' analysis is mistaken. There are two layers of out-of-court communications here. Working from the inner layer, what Birch said to Ruehs cannot be hearsay because it was not a "statement" but a command. The outer layer is Martin's testimony about what Ruehs told her. That is a statement offered to prove the truth of the matter asserted, but it is excluded from the definition of hearsay and so is admissible under Federal Rule of Evidence 801(d)(2)(D) as an admission of a party's agent within the scope of the agency. To explain:

Rule 801(c) defines hearsay as "a *statement* that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the *statement*." (Emphasis added.) A "statement," in turn, is a person's "oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). In other words, statements assert propositions that may be true or false. They are distinct from other forms of communication, such as questions or commands. "[A] command is not hearsay because it is not an assertion of fact." *United States v. White*, 639 F.3d 331, 337 (7th Cir. 2011), citing *United States v. Murphy*, 193 F.3d 1, 5 (1st Cir. 1999); see also *United States v. Love*, 706 F.3d 832, 840 (7th Cir. 2013) ("questions are not 'statements' and therefore are not hearsay") (collecting cases).

It is possible in certain contexts for a question or command to function effectively as an assertion, such as with a code phrase. See, e.g., *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) ("Indeed, if the statements were questions or commands, they could not—absent some indication that the statements were actually code for something else—be offered for their truth because they would not be assertive speech at all."); see also George E. Dix et al., *McCormick on Evidence*, § 246 (Kenneth S. Broun et al. eds., 7th ed. June 2016 Update) (noting that courts sometimes categorically exclude from the hearsay definition questions and commands but that "[m]ore appropriately nuanced opinions find such statements hearsay despite their form if the circumstances and/or wording demonstrate an intent to assert").

Here, Martin testified that Birch commanded Ruehs not to hire Baines. According to Martin, Ruehs said, "You didn't hear this from me, but I was told from higher up, Ms. Birch, *that I could not hire her*." (Emphasis added.) What Birch reportedly said to Ruehs was not a statement because it was not an assertion of fact. It was a command: you may not hire Regina Baines. There is no evidence that the command was intended to communicate indirectly an assertion, such as with a code. Birch's command to Ruehs was not hearsay.

Next, as Walgreens acknowledges, Martin may testify about what Ruehs said to her—that she wanted to hire Baines but Birch ordered her not to—because what Ruehs said was a statement of a party opponent being offered against that party. Under Rule 801(d)(2)(D), a statement is not hearsay when "offered against an opposing party and … made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Ruehs' statement to Martin

is a clean fit. We have explained, in reversing summary judgment in another discrimination case against Walgreens, coincidentally, that a "subordinate's … account of an explanation of the supervisor's … understanding regarding the criteria utilized by management in making decisions on hiring, firing, compensation, and the like is admissible against the employer, regardless of whether the declarant has any involvement in the challenged employment action." *Simple v. Walgreen Co.*, 511 F.3d 668, 672 (7th Cir. 2007), quoting *Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 298 (3d Cir. 2007); see also *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 823 (7th Cir. 2011) (reversing summary judgment based on defendant's agent's out-of-court statements about reasons for firing plaintiff). In sum, Birch's command to Ruehs is not hearsay, and Ruehs' statement to Martin is an admission by the agent of a party opponent. The critical portions of Martin's testimony are admissible. Weighing their credibility will be a question for the jury.

C. *Evidence of a Causal Connection*

With Martin's testimony about Ruehs' statement available to her, Baines presented substantial evidence that can support a reasonable inference of retaliatory intent. There are several indications that something was amiss with Walgreens' decision not to hire Baines: As noted, Baines' application and interview scores are mysteriously missing. Walgreens offers no explanation for how or why. Ruehs hired someone with less experience than Baines. When first asked by an EEOC investigator, Ruehs initially denied even having interviewed Baines. Ruehs also may have lied when she left Baines a voicemail saying that she had selected someone else for the pharmacy technician position and then interviewed and hired

Martin for a pharmacy technician position only days later. Most important, Martin testified that Ruehs told her that district manager Birch intervened to stop her from hiring Baines.

Martin's testimony is particularly important because it provides a link between Baines' earlier EEOC filings and Walgreens' 2014 decision not to rehire her. Birch was personally involved in handling Baines' earlier EEOC charges. She attended the tense meeting where Baines was told that she had "messed up" by filing the charges. The evidence of her unusual intervention to stop Ruehs from hiring Baines as a pharmacy technician (in just one of the twenty or thirty stores that Birch oversaw) supports a reasonable inference that Baines' earlier protected activity caused Walgreens' 2014 decision not to rehire her. Birch and Ruehs both deny Martin's account, of course, but on summary judgment, Walgreens and we must accept it as true. This evidence, combined with other circumstantial evidence, creates a genuine dispute of material fact.

Since we take Martin's testimony as true, we accept her account that Birch stopped Ruehs from hiring Baines. Walgreens argues that even if Birch did intervene, Martin testified that Ruehs said she did not know *why* Birch forbade her from hiring Baines. Thus, Walgreens argues, we do not know why Birch intervened, and it could have been for a lawful reason. That is possible, but that approach flips the summary judgment standard on its head and seems to insist mistakenly that direct evidence of retaliatory intent is required. At the summary judgment stage, we must draw all reasonable inferences in favor of Baines as the non-moving party. *Magin*, 420 F.3d at 686.

Walgreens' argument also fails to take account of just how much Birch's (presumed) intervention deviated from Walgreens' normal hiring practice. An employer's unusual deviation from standard procedures can serve as circumstantial evidence of discrimination. See, e.g., *Coleman v. Donahoe*, 667 F.3d 835, 858 (7th Cir. 2012) (explaining that selective enforcement of company policy can establish pretext); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 891–92 (7th Cir. 2001) (same); see also *United States ex rel. Hamrick v. GlaxoSmithKline LLC*, 814 F.3d 10, 22 (7th Cir. 2016) ("[D]eviations from standard procedures can give rise to an inference of pretext.") (quotations omitted). Here, Birch's intervention was highly unusual given her position in the corporate hierarchy. As a district manager Birch oversaw approximately twenty to thirty stores. She normally hired managers, and the managers would hire other employees such as pharmacy technicians. Moreover, Birch's primary responsibility was retail operations, not pharmacy management. This account is also consistent with Ruehs' testimony that she generally hired pharmacy technicians without consulting other managers.

Why, then, would Birch have deviated from the normal practice to micromanage the decision whether to hire one particular pharmacy technician in one of the twenty to thirty stores that she managed? Walgreens offers no explanation. Instead, Walgreens insists on its own version of the facts. It argues that Birch did not intervene at all, and that Ruehs decided not to hire Baines because one of Baines' former co-workers gave her a negative review.[2] That may or may not be

---

[2] In addition, Walgreens incorrectly argues that it is undisputed that Baines' former co-worker had no knowledge of her EEOC charges. However, Baines set forth evidence to dispute this claim. In her deposition,

true, but Walgreens' argument about the disputed facts cannot support summary judgment in its favor. The argument based on these conflicting accounts of the facts shows that there is a genuine dispute of material fact that cannot be decided on summary judgment.

Martin's testimony is also important for a related reason. The factual accounts provided by Birch and Ruehs cannot be squared with Martin's testimony. On summary judgment, of course, we must accept Martin's testimony as true. If it is true, then it also provides evidence that Walgreens lied. Evidence that an employer lied about the reasons for an adverse employment action permits a trier of fact to infer that the decision was actually motivated by discriminatory animus. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) ("[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.") (emphasis in original). The Supreme Court has noted that an employer's false explanation is "one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Id.* We have explained: "Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment." *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002), quoting *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir. 1995). Here, Baines provided evidence through Martin's testimony

---

Baines testified that her former co-worker "stated that he did not want to work around me because of the EEOC case that I had filed against the company; that he did not know how to act around me, he did not know what to say when he was around me, and he felt uncomfortable around me."

that the explanations provided by Birch and Ruehs were false. Based on this falsity, a trier of fact could "infer the ultimate fact of intentional discrimination." *Perdomo*, 67 F.3d at 145, quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

To recap, Martin's testimony provides a link between Baines' protected activity and Walgreens' adverse employment action; it provides circumstantial evidence of unlawful retaliation because of Birch's unusual departure from ordinary hiring procedures; and it provides evidence that Birch and Ruehs lied about why Baines was not hired, which would permit a trier of fact to infer that the real reason was discrimination. All of this evidence is further supported by other circumstantial evidence, such as the unexplained missing records of Baines' interview and her scores.

Walgreens attempts to undercut all of this evidence by emphasizing the length of time that passed between Baines' EEOC charges in 2007 and 2009 and Walgreens' failure to rehire her in 2014. This delay, Walgreens argues, undermines any inference of a causal connection between the protected activity and the alleged retaliation. Walgreens cites a long list of cases to support its claim, arguing that even a four-month gap can undermine a causal connection.

It is true that the passage of time can weaken and eventually break an inference of causation. See, e.g., *Lalvani v. Cook County*, 269 F.3d 785, 790 (7th Cir. 2001). But the many cases that Walgreens cites stand for a different proposition: when there is a long gap between a protected activity and an adverse employment action, a plaintiff cannot support her causal connection solely with evidence of "suspicious tim-

ing." Additional evidence is necessary. Put simply, "suspicious timing" can provide circumstantial evidence of retaliation, but generally the timing is not suspicious when there is a long gap between the protected activity and the adverse employment action. This principle does not mean, however, that a long gap will undermine a causal connection that is otherwise supported by sufficient circumstantial evidence, as is the case here.[3]

---

[3] The nine cases cited by Walgreens simply show that when there is a long gap between a protected activity and an adverse employment action, evidence of "suspicious timing" alone is insufficient to find a causal connection. See *Lalvani*, 269 F.3d at 791 ("[T]here will be cases in which a plaintiff can demonstrate causation despite a substantial time lag. This, however, is not one of them. Other than pure speculation … [plaintiff] offers nothing to support a causal connection.") (citation omitted); *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016) (fifteen-month gap too long to establish causal connection when plaintiff did "not cite any evidence that demonstrates that her supervisor knew about the 2010 EEOC charge"); *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 481 (7th Cir. 2010) (year-long gap is insufficient evidence of causal connection when plaintiff presented "no other factual or legal theory linking [protected activity] to her termination"); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010) (suspicious timing, without more, is insufficient to establish causal connection when gap is over half a year); *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003) (plaintiff provided "nothing to establish causation" other than "pure speculation" and one-year gap was "far too long—at least on this record—to allow a reasonable fact-finder to infer that her termination was causally related to the filing of her complaint"), overruled in part on other grounds, *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016); *Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (no causal connection when gap is four months and plaintiff "has not presented any direct evidence of causal connection"); *Salvato v. Illinois Dep't of Human Rights*, 155 F.3d 922, 925 (7th Cir. 1998) (six-month gap, without other evidence, is insufficient evidence to find causal connection); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (five-

We have long noted that the passage of time is not dispositive, and Walgreens concedes this point in its brief. See *Hicks v. Forest Preserve Dist. of Cook County*, 677 F.3d 781, 789 (7th Cir. 2012) ("[T]here are no bright-line rules to apply when considering the temporal proximity of adverse actions to protected activities because it is a fact-intensive analysis."). There are "cases in which a plaintiff can demonstrate causation despite a substantial time lag." *Lalvani*, 269 F.3d at 791; see also *Malin v. Hospira, Inc.*, 762 F.3d 552, 559 (7th Cir. 2014) (collecting cases). This is such a case. Baines does not rely on evidence of "suspicious timing" to support her claim. She relies instead on testimony from Lisa Martin and a good deal of other circumstantial evidence. Moreover, unlike many retaliation cases, here the adverse employment action was failure to rehire, not termination or demotion. Because Baines had not worked at Walgreens since 2008, her 2014 application was Walgreens' first opportunity to retaliate for her 2009 EEOC charge. Under these circumstances, the time gap is understandable and presents a question for a jury at trial rather than a judge on summary judgment.

We REVERSE the grant of summary judgment, and we REMAND for further proceedings consistent with this opinion.

---

month gap, without other evidence, is insufficient evidence to find causal connection); *Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (four-month gap "standing by itself" does not establish a causal connection).