NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2018
Decided March 26, 2018

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2227

| | |
|---|---|
| MARGIE A. RELIFORD, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District |
| | of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:16-cv-00358-LJM-DML |
| ADVANCE/NEWHOUSE PARTNERSHIP, | Larry J. McKinney, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Margie Reliford appeals the entry of summary judgment on her workplace-retaliation claims. She asserts that her employer, Advance/Newhouse Partnership (ANP for short), retaliated against her in violation of federal employment-protection laws (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Civil Rights Act of 1866, 42 U.S.C. § 1981). The retaliation, she says, consisted of increasing her workload and later laying her off for complaining about her supervisor. Because her claims are not supported with adequate evidence, we affirm the district court's judgment.

ANP, a national telecommunications company, hired Reliford in 2008. She began working in 2009 as a customer representative in ANP's office in Indiana where she was

responsible for resolving work-order issues. The next year, ANP transferred that office into its Subscriber Accounting department. Reliford was transferred (along with three other work-order representatives) and began reporting to Kristi Piper. Piper combined the duties of the work-order and subscriber-billing representatives. The employees retained their original titles in the payroll system but they had the same jobs as each other.

After this consolidation, Reliford's work schedule became an issue. The Subscriber Accounting department was open six days a week; all employees worked Monday through Friday, and two employees worked Saturdays on a rotating basis. After Reliford requested a schedule change in 2011 to accommodate her outside part-time employment, Piper scheduled Reliford to work every Saturday.

Beginning in 2014, Piper and Reliford clashed over Reliford's productivity. Piper compared Reliford's work on Saturdays to the other employees who worked Saturdays. Piper found that Reliford processed significantly fewer work orders than her weekend counterparts. Piper also discovered, by examining Reliford's key-card record that during a 60-day period Reliford was occasionally late to work. The person who ran the key-card report for Piper told others about it, embarrassing Reliford.

In May 2014 Piper met with Reliford to warn her about her productivity and tardiness. Reliford responded that she had too much work to complete on Saturdays. Reliford says that at this meeting Piper called her "lazy" (Piper denies this), a comment that Reliford, who is African American, took to be racist. Piper asked Reliford to keep track of her tasks so that Piper could see if her workload was too heavy; Reliford did this once only.

Reliford complained about Piper's supervision after Reliford received this warning about her productivity. She met with the human-resource representative, Susie Ehman. At their first meeting, Reliford told Ehman that Piper had threatened to fire her and "is still harassing me." She said that she planned to report Piper to the EEOC, although she did not say on what basis. Two follow-up meetings occurred in June. Once Reliford and Ehman talked through these contested issues, they were joined at their last meeting "by Kristi Piper for wrap up."

After this series of meetings, two employees left the department in late 2014, so Piper spread their work among all the remaining employees. Reliford noticed that her workload increased. By March 2015, Piper reduced Reliford's tasks after she received a

poor performance review and complained about her workload. Shortly after this change, in May, Reliford filed a charge with the EEOC alleging that ANP retaliated against her for her earlier complaints with extra work. Piper eventually learned that Reliford had filed an EEOC charge.

About nine months after she filed her charge, ANP eliminated the position of work-order representative in five states, including Indiana where Reliford worked. Piper was not involved in the decision. Reliford and the only other local coworker in the same position, Amy Morgan, were laid off. Like Reliford, ANP had transferred Morgan to the Subscriber Accounting department during the consolidation; after the consolidation the two had similar duties and were paid about the same. Reliford has presented no evidence that before the layoffs Morgan had complained about discrimination. Reliford speculates that ANP laid off Morgan as "collateral damage" to get rid of Reliford without raising suspicion.

This lawsuit followed. Reliford accused Piper of race discrimination (a claim that she has abandoned) and ANP of retaliating against her for complaining about Piper. After discovery, the district judge granted ANP's motion for summary judgment. Giving three reasons, the judge concluded that Reliford had not shown that ANP increased her workload in retaliation. First, Reliford had no evidence that Piper knew about Reliford's complaints to Ehman. Second, Piper assigned Reliford (and others) additional work because two employees had left the department. Third, after Reliford complained about the additional work, Piper reduced it. As to the layoff, given that the only other comparable worker (Morgan) was not treated more favorably than Reliford, the judge ruled that Reliford had no evidence suggesting that her layoff was a cover for retaliation.

On appeal, Reliford raises two principal arguments. First, as in the district court, she maintains that ANP retaliated against her for complaining about Piper by boosting her workload and laying her off. Second, she now adds on appeal an argument that ANP's retaliation also included verbal abuse from Piper.

The requirements for getting past a motion for summary judgment on a claim of retaliation under either Title VII or § 1981 are well established. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). Reliford must produce enough evidence for a reasonable jury to infer that she engaged in statutorily protected activity, that ANP took materially adverse action against her, and that her protected activity caused the adverse action. *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695–96 (7th Cir. 2017).

An employee's complaints about workplace treatment are statutorily protected when they assert that the employer has committed prohibited discrimination. *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016); *Orton-Bell v. Ind.*, 759 F.3d 768, 776 (7th Cir. 2014).

Two flaws doom Reliford's claim that Piper unlawfully retaliated against her by increasing her workload. First, although Reliford complained about Piper to Ehman in mid-2014, Reliford has furnished no evidence that at their meetings she criticized Piper for race (or other prohibited) discrimination. So Reliford has not met the first element of protected activity. Second, Reliford has not met the third element—causation. Reliford observes that her workload increased after she complained about Piper, and it is true that augmenting someone's workload can be an adverse employment action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70–71 (2006). But the undisputed evidence is that this increase occurred because the department lost two employees late in 2014 and the work had to be redistributed to the other employees. Reliford replies that the two employees left months *before* her work increased. But she presents no evidence to support that assertion. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). So the workload-retaliation claim fails for lack of evidence.

That brings us to Reliford's claim that ANP laid her off for retaliatory reasons. This claim also fails on causation grounds. Reliford argues that ANP laid her off after she filed a charge of discrimination with the EEOC. That sequencing is correct, but the layoff occurred nine months after the filing, and that timing alone is not sufficient evidence of causation. *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014).

Moreover, ANP eliminated *all* positions like Reliford's in Indiana. The layoffs included the coworker Morgan, who was comparable to Reliford in every material respect, and even though Morgan had not, so far as the record shows, engaged in protected activity, ANP laid her off too. Thus, Reliford has supplied no evidence from which a jury could infer retaliation. *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 597 (7th Cir. 2017). Reliford replies that Morgan was "collateral damage"—laid off to throw the scent off Reliford's unlawful layoff. But this is speculation and is therefore not enough to survive summary judgment. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 571 (7th Cir. 2017). Anyway workers in five states were laid off, so the record does not support the speculation that ANP laid off only Morgan to throw off suspicion.

We conclude with Reliford's new argument on appeal: that ANP also retaliated against Reliford with unpleasant verbal comments from Piper. ANP responds that Reliford forfeited this argument because she raised it only in her reply to ANP's summary-judgment motion. In that reply, Reliford's counsel described the verbal comments: "Piper yelled at her during weekly one-on-one meetings, told her to quit, and threatened to fire her on multiple occasions. Counsel also conceded that "these do not constitute adverse employment actions … ." That concession defeats the argument. Verbal comments that are not materially adverse do not support a retaliation claim. *Burton*, 851 F.3d at 695–96. Thus forfeiture aside, this new contention goes nowhere.

Therefore, we affirm the district court's judgment.